Decision and Journal Entry
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, William Queen appeals his conviction on two counts of rape following two trials in the Medina County Court of Common Pleas. This Court affirms.
 I.
On August 18, 1999, the Medina County grand jury indicted Defendant on two counts of rape, in violation of R.C. 2907.07(A)(2), and one count of felonious assault in violation of R.C. 2903.11(A)(2). Count one charged that on September 9, 1996, Defendant raped his sister-in-law, Magdalena Young. Count two alleged that on May 16, 1999, Defendant raped his wife, Glacie. Count three charged that Defendant assaulted Glacie on May 31, 1999.
All three counts were tried together on March 20, 2000. At the conclusion of the trial, Defendant was convicted of the 1996 rape, but the jury could not reach a decision on the remaining two charges. A new trial was held on the remaining two counts on July 26, 2000. This time the jury convicted Defendant of the 1999 rape, but acquitted him of the felonious assault charge.
On August 4, 2000, Defendant was sentenced to seven years on the first rape and nine years on the second rape, with the sentences to be served consecutively. A sexual predator hearing was conducted, and the court found Defendant to be a sexual predator.
Defendant filed a timely appeal. He assigns three errors relative to the first trial, and three errors relative to the second trial.
 II. FIRST TRIAL ASSIGNMENT OF ERROR NO. 1
 TRIAL COUNSEL WAS INEFFECTIVE IN REPRESENTING DEFENDANT IN FAILING TO REQUEST SEVERANCE [OF] COUNT I AND COUNT II OF THE INDICTMENT PURSUANT TO CRIM.R. 14.
Defendant asserts that his counsel in the first trial was ineffective in failing to move for severance of the first count of rape and the second count of rape, pursuant to Crim.R. 14. Defendant asserts that he was prejudiced when he was tried on two counts of rape allegedly perpetrated against two different persons, two and one-half years apart.
In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonable representation, and that this deficient performance resulted in prejudice to the appellant. Strickland v.Washington (1984), 466 U.S. 668, 687-688, 80 L.Ed.2d 674, 693. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, 80 L.Ed.2d at 695, quoting Michel v. Louisiana (1955), 350 U.S. 91,101, 100 L.Ed. 83, 93.
In the instant case, Defendant's trial counsel addressed the court prior to trial on the issue of the separation of the cases. Defense counsel stated, "I am glad the Prosecutor [joined these cases]. * * * I would like to indicate for the record, the client and I discussed a separation of these cases, and thought it was in his interest to try the cases together." It is clear from defense counsel's remarks that his decision not to move to separate the charges, a decision made after consultation with Defendant, was a conscious decision made as part of sound trial strategy. Defendant has not overcome the presumption that his counsel engaged in sound trial strategy, as is evident from the record. Nor has Defendant demonstrated that counsel's performance fell below an objective standard of reasonable professional representation.
Defendant's first assignment of error relative to the first trial is not well-taken and it is overruled.
 III.
FIRST TRIAL ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT-APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29, AS THE STATE PRESENTED INSUFFICIENT EVIDENCE OF EACH AND EVERY ELEMENT OF THE OFFENSES CHARGED BEYOND A REASONABLE DOUBT.
FIRST TRIAL ASSIGNMENT OF ERROR NO. 3
 DEFENDANT-APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
A review of the weight of the evidence determines whether the state has met its burden of persuasion. State v. Angle (June 2, 1999), Medina App. No. 2875-M, unreported, at 7. This Court has observed that "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis sic.) Statev. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4. Because this Court finds that the conviction was supported by the weight of the evidence, this Court necessarily finds that there was sufficient evidence to support appellant's conviction.
 When an appellate court reviews the weight of the evidence [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Statev. Ali (Apr. 28, 1999), Summit App. No. 19119, unreported, at 9.
In order to secure a conviction on the rape charge, the prosecution was required to prove beyond a reasonable doubt that Defendant had (1) engaged in sexual contact (2) with Magdelena Young (3) without her consent (4) by force or threat of force. See R.C. 2907.02. Sexual conduct includes "vaginal intercourse between a male and female." R.C.2907.01(A).
At the close of the state's case on the 1996 rape charge, Ms. Young had testified that while Defendant was alone with her in his truck, Defendant forcibly compelled Ms. Young to engage in sexual intercourse with him. Ms. Young testified that Defendant restrained her despite the fact that she struggled to get free. Ms. Young testified that Defendant ejaculated on her stomach. The emergency room physician who examined Ms. Young the day after the alleged offense testified that there was vaginal tenderness, consistent with a vaginal rape. A serologist from the Ohio Bureau of Criminal Investigation testified that rape test did not detect the presence of sperm, but there was evidence of semen on Ms. Young's clothing. Several hours after the rape, Ms. Young told her husband that the defendant had raped her.
Defendant did not testify but he had made statements to investigating officers in the days and weeks following the rape. Defendant initially stated that he had not had sexual contact with Ms. Young. He later admitted to police that he lied initially, that in fact he had engaged in oral sex with Ms. Young, but that it was consensual sex. Angela Gasser, Defendant's girlfriend at the time of the alleged rape, also testified. She stated that she and Defendant were living together, although Defendant was still married. Ms. Gasser testified that Defendant told her at the time that he was divorced. Ms. Gasser also testified that when the Medina police contacted Defendant at Ms. Gasser's Wooster home, Defendant told her that the police were inquiring about Defendant's belongings that were still at his ex-wife's house. Ms. Gasser also testified that Defendant later admitted to her that he had cheated on her with Ms. Young, that they had not engaged in intercourse, but that Defendant was concerned that Ms. Young may have become pregnant by masturbating with his sperm. The defense offered no evidence to rebut Ms. Gasser's testimony about Defendant's statements.
The jury had the unrebutted testimony of Ms. Young that Defendant had raped her. They were also presented with Defendant's own statements to the police and to Ms. Gasser that he had engaged in sexual activity with Ms. Young, including his later admission to the police that he initially lied when he denied any sexual activity with Ms. Young. The state produced sufficient evidence, if believed, to permit reasonable minds to conclude that Defendant had raped Ms. Young. Defendant's second assignment of error on the first trial is not well-taken and it is overruled.
Defendant claims the evidence does not support this conviction. Defendant notes that investigators found no sperm in the rape kit. However, Ms. Young's testimony about the rape explains why sperm would not be found in the rape test. Defendant also challenges the witnesses' credibility. However, matters of credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
This court cannot conclude that in resolving the conflicts in the testimony, the jury clearly lost its way in returning a guilty verdict.
Defendant's third assignment of error relating to the first trial is not well-taken and it is overruled.
 IV.
SECOND TRIAL ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ERRED IN PERMITTING THE INTRODUCTION OF EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS PURSUANT TO EVIDENCE RULE 404(B) AND R.C. 2945.59.
The second trial involved two charges, that Defendant had raped his wife, Glacie, on May 16, 1999, and that he had assaulted her on May 31, 1999. During the first trial there was a hung jury on these two charges. At the first trial, defense counsel attacked Glacie's credibility, arguing that she belatedly reported these crimes to the police only after Defendant threatened to obtain custody of their minor son if Glacie filed for divorce. During the first trial, the prosecution sought to introduce evidence that Defendant physically abused Glacie during the marriage. The state wanted to use the evidence to show that Glacie reasonably feared retaliation if she reported the instant rape and assault. The judge excluded all evidence of the prior bad acts. However, at the second trial the court allowed the state to question Glacie about Defendant's prior abuse in the marriage.
In his third assignment of error, Defendant argues that the trial court erred in admitting evidence of his prior acts of domestic violence, in violation of Evid.R. 404(B) and R.C. 2945.59. This Court disagrees.
It is within the trial court's sound discretion to determine whether evidence is relevant, and whether relevant evidence should be excluded.State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. The trial court's decision will be reversed only upon a finding that the trial court abused its discretion. Williams v. Oeder (1995),103 Ohio App.3d 333, 341. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Evid.R. 404(B) allows "[e]vidence of other crimes, wrongs, or acts * * * [to be admitted] for * * * purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." A conviction will not be reversed because a specific purpose under Evid.R. 404(B) was not asserted by the state provided that the evidence meets one of the stated purposes under Evid.R. 404(B). State v. Davis (1991), 62 Ohio St.3d 326, 338.
This Court has previously stated that "[p]rior bad acts by a defendant against the same victim are admissible in domestic violence cases to prove the defendant's intent * * *." State v. Blonski (1997),125 Ohio App.3d 103, 113. When using a defendant's prior acts to show his intent, "the offense for which the defendant is being tried and the other act must have occurred reasonably near to each other and a similar scheme, plan or system must have been utilized to commit the offense at issue and the other offenses." Id., citing State v. Elliott (1993),91 Ohio App.3d 763, 771.
In the instant case, Defendant first raises as error the testimony of Glacie. She testified on direct examination that she endured ongoing physical abuse during her marriage to Defendant. She also stated that there were two specific incidents of abuse where Defendant was prosecuted as a result of his actions. The record also indicates that on several occasions she and Defendant argued about Glacie's desire to obtain a divorce. Glacie's testimony indicates that these arguments would escalate into Defendant's threatening Glacie and becoming violent. These incidents are probative of Defendant's intent to cause or attempt to cause physical harm to Glacie during the alleged felonious assault. Because evidence of Defendant's prior acts of violence against Glacie was admissible to show Defendant's intent in committing the felonious assault for which he was charged, the trial court did not abuse its discretion in admitting Glacie's testimony.
Second, Defendant contends that the trial court erred in allowing the State to question Defendant's mother as to her knowledge of Defendant's prior acts of domestic violence, as follows:
 Q. You are aware of the abuse your son inflicted on [Glacie], aren't you?
[Defense Counsel]: Objection.
The Court: Sustained.
 Q. When you made the statement she supposedly said, she would see him in jail, for all you know, she is talking about when he beat her again?
[Defense Counsel]: Objection.
 The Court: Sustained. More argumentative than probative.
* * *
 Q. This is a woman who supposedly makes this statement to you, when she is the victim of pending cases, and is unwilling to cooperate with the Prosecutor's Office and the police, you know that?
 [Defense Counsel]: Objection.
 The Court: Sustain that. She doesn't have to answer. The jury is instructed to disregard the last question.
Additionally, the trial court instructed the jury as follows:
 Statements or answers that were stricken by the Court or which you were instructed to disregard are not evidence and must be treated as though you never heard them.
 You must not speculate as to why the Court sustained the objection to any question or what the answer to such question might have been. You must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered.
This Court notes that the trial court sustained Defendant's objections to all of the above statements and no answers were given. Furthermore, as indicated above, the trial court specifically instructed the jury with regard to the excluded statements of the attorney. As an appellate court, we must presume that the jury followed the trial court's curative instruction. State v. Franklin (1991), 62 Ohio St.3d 118, 127. Based on the foregoing reasons, we do not find that the trial court committed error. Accordingly, Defendant's third assignment of error is overruled.
 V.
SECOND TRIAL ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT-APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29, AS THE STATE PRESENTED INSUFFICIENT EVIDENCE OF EACH AND EVERY ELEMENT OF THE OFFENSES CHARGED TO PERMIT THE JURY TO FIND [GUILT] BEYOND A REASONABLE DOUBT.
SECOND TRIAL ASSIGNMENT OF ERROR NO. 2
 DEFENDANT-APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his first and second assignments of error, Defendant has argued that his conviction for rape was against the manifest weight of the evidence and based upon insufficient evidence. We disagree.
We previously stated the standard of review for these challenges to the evidence in assignments of error one and two from the first trial. Upon review of the evidence presented at trial, Defendant's conviction for rape was not against the manifest weight of the evidence and thus was sufficient as a matter of law. Defendant was convicted of rape in violation of R.C. 2907.02(A)(2), which provides, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
Glacie testified that after showering on the day in question, she opened the shower curtain and found Defendant standing there. She testified that after she went into the bedroom to get dressed, Defendant took off her towel and grabbed her work clothes, which she had laid out prior to taking a shower. She stated that she begged him to return her clothes and "not to do this." Glacie further testified that Defendant cornered her and pushed her on the bed and held her there. She stated that he then turned her to the other side of the bed, so he could hold the door closed with his foot to prevent their son from entering the room. He pulled down his pants and forced her to have sexual intercourse with him. Glacie testified that she begged him to stop and tried to fight him. She also stated that she yelled for her son to come into the bedroom, but that Defendant continued to hold the door and told her that if she did not tell their son to go watch television, he would kill them both. Finally, Glacie testified that after Defendant finished raping her, he told her that she got what she deserved and what she wanted. She also stated that the next morning she told a co-worker, Brenda Oxenrider, about the rape. Oxenrider testified that Glacie told her about the rape very shortly after it occurred.
The evidence presented to the jury by Defendant was the testimony of Bonnie Dodril, Defendant's mother. Dodril testified that Glacie had told her that "[Glacie] would see [Defendant] in jail before he would see [their son]." Additionally, on cross-examination, defense counsel attempted to attack the credibility of Glacie and her version of the rape.
Having reviewed the record in full, the Court finds that this appeal does not present extraordinary circumstances requiring the reversal of the jury verdict as being against the manifest weight of the evidence. While some testimony was divergent, as a general matter, the determination of the credibility of witnesses is a matter within the sound discretion of the jury. State v. Mills (1992), 62 Ohio St.3d 357,368. Taken as a whole, we cannot say that the victim's version of the events was so unbelievable that it should have been rejected by the jury. Thus, this Court cannot say that the jury clearly lost its way in resolving conflicts in the testimony. As such, Defendant's first and second assignments of error are overruled.
 VI.
Defendant's six assignments of error are overruled.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________________ DONNA J. CARR